UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00277-CRS-RSE

CASEY C.                                                                          PLAINTIFF

VS.

MARTIN O'MALLEY,[1]
*Commissioner of Social Security*                                                 DEFENDANT

## REPORT AND RECOMMENDATION

The Commissioner of Social Security denied Casey C.'s[2] ("Claimant's") application for supplemental security income benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant has filed a Fact and Law Summary and Brief. (DN 13). The Commissioner has responded in a Fact and Law Summary. (DN 16). Claimant has filed a reply brief. (DN 17). The District Judge referred this case to the undersigned United States Magistrate Judge for consideration and preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (DN 12).

### I. Background

Claimant applied for supplemental security income benefits on March 12, 2020. (Transcript, hereinafter "Tr.," 283-89). In her application, Claimant alleged disability beginning on September 16, 2019, due to low back pain, schizoaffective disorder, disassociated amnesia, hypertension, anxiety, and mild agoraphobia.[3] (Tr. 318). Claimant's application was denied on

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this case.

[2] Pursuant to the Western District of Kentucky's General Order No. 22-05, any non-government party in a 42 U.S.C. § 405(g) case will be identified and referenced solely by first name and last initial in opinions issued.

[3] In her application, Claimant listed "mild agorophilia" as a limiting medical condition; however, the record indicates that Claimant meant to list "mild agoraphobia," and the Court will interpret it as such. (Tr. 318).

initial review and again on reconsideration. (Tr. 61, 81). Administrative Law Judge Dwight D. Wilkerson ("ALJ Wikerson") conducted a hearing in Louisville, Kentucky on April 12, 2022. (Tr. 38-60). Claimant attended the hearing by telephone with her attorney.[4] (Tr. 38). An impartial vocational expert also attended the hearing. (*Id.*).

During the hearing, Claimant testified to the following. Claimant currently lives with her mother. (Tr. 50). She last worked at a movie theater as a cashier and cleaner for three months. (Tr. 44-45). Claimant left this job because she "started having hallucinations when [she] would hear the IMAX go off[.]" (Tr. 45). Claimant stated that her greatest physical limitation is pain in her back that hurts with standing, bending, squatting, and sitting. (Tr. 48). She has received epidurals and radiofrequency ablation but was told she was too young to undergo spinal fusion surgery. (Tr. 48-49). Although she experienced some relief from these treatments, Claimant reported that, on some days, the pain feels worse than it did before. (Tr. 49).

In addition, Claimant struggles with her mental health. She stated that hallucinations, intrusive thoughts, and her inability to interpret social cues are her greatest impediments to working. (Tr. 47). Claimant was terminated from a previous job after she had an "episode" that resulted in an altercation with a customer. (Tr. 46). She reported that she hallucinates two to three times per day with each episode lasting from a few minutes to an hour; however, medication helps. (Tr. 47-48). Claimant testified that she occasionally sees shadows, and other times, she feels as though things are crawling on her. (Tr. 48). She stated that she hears voices that tell her to hurt herself and other people. (Tr. 50). She has suicidal thoughts which led her to undergo in-patient treatment a long time ago. (Tr. 51). She also reported experiencing unpredictable panic attacks and problems with concentration. (Tr. 52). She testified that it is difficult for her to be around people.

---

[4] Claimant agreed to appear at the administrative hearing by phone because of the COVID-19 pandemic. (Tr. 210).

(Tr. 51). She leaves the house around two times a week to go to the store with her mother, but her daily activities usually include painting, watching television, and playing with her cats. (*Id.*).

ALJ Wilkerson issued an unfavorable decision on May 25, 2022. He applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Claimant has not engaged in substantial gainful activity since March 12, 2020, the application date. (Tr. 23). Second, Claimant has the following severe impairments: degenerative disc disease, obesity, anxiety, PTSD, and schizoaffective disorder. (*Id.*). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 24). Between the third and fourth steps, ALJ Wilkerson found that Claimant has the residual functional capacity ("RFC") to perform "sedentary work" with the following limitations:

> [S]he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but she can never climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to vibrations and pulmonary irritants. She cannot work at unprotected heights or around dangerous moving machinery. She is able to perform simple and routine tasks in a lower stress work environment, meaning without strict quotas, fast paced work, or frequent changes. She can tolerate occasional interaction with coworkers and supervisors, but she may not work with the public.

(Tr. 25). Fourth, Claimant has no past relevant work. (Tr. 29). Fifth and finally, after considering Claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy she can perform. (Tr. 30). Based on this evaluation, ALJ Wilkerson concluded Claimant has not been under a disability, as defined in the Social Security Act, since March 12, 2020, the date the application was filed. (Tr. 31).

Claimant appealed ALJ Wilkerson's decision. (Tr. 259-61). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ

Wilkerson's decision. (Tr. 1). At that point, ALJ Wilkerson's denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the ALJ's decision is limited to an inquiry as to whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

## III. Conclusions of Law

Claimant raises several challenges relating to ALJ Wilkerson's decision. First, Claimant argues that ALJ Wilkerson's assessment of his physical and mental RFCs were deficient. Second, Claimant asserts that ALJ Wilkerson failed to assess the combined effect of her physical and mental impairments in determining his RFC. Third, Claimant states that ALJ Wilkerson erred in evaluating the opinion evidence in the record. Fourth, Claimant argues that the hypothetical questions ALJ Wilkerson posed to the Vocational Expert ("VE") did not accurately portray Claimant's impairments and ability to sustain work.

### A.  Physical RFC Determination

Claimant argues that ALJ Wilkerson's RFC findings regarding her physical abilities are unsupported by substantial evidence. A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases his RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

In reaching his conclusion that Claimant has the RFC to perform sedentary work, ALJ Wilkerson discussed Claimant's own testimony and summarized medical records regarding Claimant's treatment for her back pain. (Tr. 26-27). ALJ Wilkerson noted that "medical evidence supports the existence of severe low back pain with radiating numbness and weakness into her legs." (Tr. 26 (citing exs. 2F, 8F, 12F, 14F)). Claimant submitted lumbar MRIs from 2017 and

5

2021, both of which ALJ Wilkerson addressed. (Tr. 1297, 1464). ALJ Wilkerson noted that Claimant's 2017 MRI showed "disc protrusion with moderate spinal stenosis and moderate to marked lateral recess stenosis at L4-5 and L5-S1." (Tr. 27). He then discussed how Claimant's 2021 MRI showed "disc bulge at L4-5 and L5-S1 exerting mass effect on descending nerve roots . . . . [and] moderate to severe neuroforaminal narrowing." (*Id.* (citing ex. 14F)). ALJ Wilkerson also acknowledged that Claimant's obesity "places additional strain on the musculoskeletal system and can increase pain and decrease activity tolerance." (Tr. 27).

However, ALJ Wilkerson then concluded that "the longitudinal record supports that no additional limitations are needed" other than those included in his RFC. (*Id.*). He noted that, although the musculoskeletal and neurological examinations in 2F, 8F, and 12F seemed brief and contained limited findings, the ample examinations in 14F showed "largely normal findings for strength, sensation, muscle tone, and range of motion." (*Id.* (citing exs. 2F, 8F, 12F, 14F)). ALJ Wilkerson emphasized that these findings remained stable into the most recent pain management records. (Tr. 27 (citing Tr. 1627). He also discussed how, although she received varied benefits from her injections, they eventually stopped helping. (*Id.* (citing Tr. 1330, 1334, 1349)). He noted that she received "roughly 40%-50% pain relief from radiofrequency ablation." (Tr. 27 (citing Tr. 1649-50)). ALJ Wilkerson concluded that, though her dosage increased over time, she experienced pain relief from Norco and her providers observed that she was "doing well on the current medication plan." (Tr. 27 (citing Tr. 1386, 1403, 1533, 1631, 1659)).

Claimant argues that ALJ Wilkerson erred in his Step Four analysis by failing to "consider and resolve contradictory findings in the record." (DN 13, at PageID # 1820). As an initial matter, it is the ALJ's duty, not this Court's, to resolve inconsistencies in the record. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). The Court examines the record as a whole, including whatever

evidence "in the record fairly detracts from its weight," without "resolv[ing] conflicts in evidence or decid[ing] questions of credibility" to determine whether an ALJ's decision is supported by substantial evidence. *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016) (quoting *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). Thus, where an ALJ has "improperly cherry picked evidence" instead of "more neutrally weighing the evidence," his decision is unlikely to be supported by substantial evidence. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). Moreover, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand.").

Claimant maintains that "objective evidence of a worsening condition" from her 2021 MRI contradicts ALJ Wilkerson's RFC without sufficient explanation. (DN 13, at PageID # 1820). But ALJ Wilkerson acknowledged that Claimant's MRIs demonstrated "worsening findings in the lumbar spine[.]" (Tr. 28). Due to both the results of Claimant's 2021 MRI and her obesity, ALJ Wilkerson limited her to sedentary work. (*See* Tr. 27 ("The undersigned has considered these impairments in combination when limiting the claimant to a reduced range of sedentary work[.]"). As such, ALJ Wilkerson accounted for Claimant's 2021 MRI in his RFC and adequately explained his reasoning.

Claimant also argues that ALJ Wilkerson did not consider or resolve the "contradictory findings" regarding Claimant's injection treatment failure or her increased Norco dosage. (DN 13, at PageID # 1820-21). However, as addressed above, ALJ Wilkerson did consider Claimant's

treatments and their varying effects. ALJ Wilkerson's citations to multiple provider notes documenting the effectiveness of Claimant's medication, despite the need for an increased dosage, undermine Claimant's argument and support ALJ Wilkerson's RFC determination. Notably, ALJ Wilkerson did not state that Claimant received total pain relief or resolution of her back condition from her treatments. He merely found that the record did not support a complete inability to perform work.

Claimant further alleges that ALJ Wilkerson reviewed the record selectively.[5] (DN 18, at PageID # 1881). Claimant highlights portions of a treatment note from August 18, 2021, one of the notes in which Claimant's provider observed that she was "doing well on the current medication plan." (DN 13, at PageID # 1821-22; Tr. 1533). Claimant cites to the following observations from the note: Claimant received 80% pain relief from her injections for an "hour or so," her use of opioids indicated pain of a "moderate to severe degree[,]" and she reported her pain levels from the day of the visit and the previous week at 8/10 and 7/10, respectively. (DN 13, at PageID # 1821-22; Tr. 1619, 1622, 1632). Claimant contends that this evidence, "when taken as a whole, does not support the ALJ's 'doing well' conclusion" and the statement cited by ALJ Wilkerson constitutes "an independent and unconnected finding" when compared to other objective evidence. (DN 13, at PageID # 1821-22). However, ALJ Wilkerson considered the evidence cited by Claimant and reasonably concluded that Claimant experienced chronic worsening back pain which was relieved in part by her medication. As discussed above, ALJ Wilkerson noted that Claimant received varying benefits from her injections, she experienced

---

[5] Claimant argues in her Fact and Law Summary that "[t]he ALJ plays doctor by stating that the ample in number and largely normal clinical findings support his RFC limitations." (DN 13, at PageID # 1823). The Commissioner interpreted this assertion as an argument that "the RFC must be based upon a medical expert opinion." (DN 16, at PageID # 1850). However, in her reply, Claimant clarified that she intended to argue that "the ALJ's [sic] used selected findings without rationalization of the contradictory findings in the same notes." (DN 18, at PageID # 1881).

severe low back pain, and her medication plan was fairly successful after an increase in her dosage. (Tr. 26-27). In fact, Claimant's Norco dosage was increased from 5 milligrams to 7.5 milligrams after her August 18, 2021 appointment, and, at her next appointment on October 27, 2021, she informed her physician that "[t]he increase in pain medication has been beneficial." (Tr. 1629, 1650). The Undersigned has independently reviewed the record and finds that ALJ Wilkerson satisfied his duty to consider the record as a whole.

Nor does Claimant's reliance on *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000) persuade the Court otherwise. First, Claimant incorrectly cites this Third Circuit case as one from the Sixth Circuit. (DN 18, at PageID # 1880). Regardless, *Morales*' holding provides no persuasive support for Claimant's argument. In *Morales*, the Third Circuit held that "a single piece of evidence is not substantial if the Commissioner failed to resolve a conflict created by countervailing evidence or if it is overwhelmed by other evidence—particularly that offered by a treating physician." *Morales*, 225 F.3d at 320. Here, if the August 18, 2021 treatment note had been the only record evidence cited by ALJ Wilkerson to show that her subjective allegations were inconsistent with the record, Claimant's argument would, perhaps, have some weight. However, as noted above, the observations cited by Claimant from the treatment note do not conflict with ALJ Wilkerson's summary of Claimant's medical record. Furthermore, ALJ Wilkerson not only cited to four other treatment notes documenting the effectiveness of Claimant's medication plan, but also discussed substantial evidence from elsewhere in the record which undermines Claimant's complaints regarding her back pain. Thus, ALJ Wilkerson's physical RFC determination is not in direct conflict with or "overwhelmed by" evidence in her medical record.

Finally, Claimant disagrees with ALJ Wilkerson's description of the musculoskeletal and neurological examinations in exhibits 2F, 8F, and 12F as "brief," [6] emphasizing that these exhibits "contain 216 pages[.]" (DN 13, at PageID # 1823-24). However, while the exhibits constitute hundreds of pages in their entirety, the portions describing Claimant's examinations only encompass a few pages. The Undersigned finds no issue with ALJ Wilkerson's description of these examinations. The majority of Claimant's physicians did not examine her musculoskeletal system during her physical examinations, and any discussion of this system is brief, generalized, and inconsistent. (*See, e.g.*, Tr. 485 ("Negative for back pain and joint pain."), 496 ("Positive for back pain and joint swelling. Negative for myalgias and neck pain."), 583 ("Positive for arthralgias, joint swelling and myalgias. Negative for back pain and neck pain.")). The discussion of results from any neurological examination is similar. (*See, e.g.*, Tr. 483 ("Positive for dizziness and headaches. Negative for light-headedness."), 489 ("Positive for dizziness and light-headedness. Negative for seizures, syncope, speech difficulty and headaches."), 490 ("She is alert and oriented to person, place, and time.")). When compared to the musculoskeletal and neurological examinations in exhibit 14F, these observations do, in fact, appear "brief" and vague. (*See, e.g.*, Tr. 1303 (observing from Claimant's neurological examination: "No gross sensory or motor deficits. Cranial nerves II-XII intact."), 1345 (observing from Claimant's musculoskeletal examination: "Normal range of motion without pain or crepitus. No deformities or muscle wasting. Muscle strength 5/5.")). Nevertheless, regardless of how ALJ Wilkerson characterized the

---

[6] Claimant also takes issue with ALJ Wilkerson's characterization of her back pain treatment—including medication, injections, and radiofrequency ablation—as "routine and conservative." (DN 13, at PageID # 1821). However, other cases in this Circuit have characterized similar treatments as routine and conservative. *See, e.g.*, M*ount v. Colvin*, No. 3:13CV-01016-HBB, 2015 U.S. Dist. LEXIS 15207, at *33-34 (W.D. Ky. Feb. 9, 2015) (characterizing the claimant's treatment as "conservative" where the claimant did not require hospitalization or surgical intervention); *Dimarzio v. Comm'r of Soc. Sec.*, No. 11-CV-15635, 2013 U.S. Dist. LEXIS 165780, at *43-44 (E.D. Mich. June 24, 2013) ("Plaintiff's treatment for his physical and mental impairments was modest, consisting of prescription medication and some epidural steroid injections. Such modest treatment is inconsistent with a finding of disability.").

examinations, because the Undersigned determined that his analysis of Claimant's physical RFC is supported by substantial evidence, remand is not warranted.

When faced with a record containing contradictory evidence, it is the duty of the ALJ to resolve these conflicts, not this Court. *See Bass*, 499 F.3d at 509. ALJ Wilkerson reasonably did so here. The Undersigned finds ALJ Wilkerson's determination of Claimant's physical RFC is supported by substantial evidence.

### B.  Mental RFC Determination

Claimant argues that ALJ Wilkerson's findings regarding her mental abilities are unsupported by substantial evidence. As with Claimant's physical RFC, in reaching his decision to restrict Claimant to low-stress, simple, and routine work with limited social interactions, ALJ Wilkerson discussed Claimant's own testimony and summarized medical records related to her mental impairments. (Tr. 26-28). ALJ Wilkerson noted that Claimant has been treated for "complaints of auditory/visual hallucinations, fatigue, difficulty concentrating, social phobia, racing thoughts, and depressed moods." (Tr. 27 (citing exs. 2F, 13F). He outlined Claimant's mental health treatment records, providing an overview of her Seven Counties visits. (Tr. 27 (citing exs. 13F, 17F)). There, she reported having "social anxieties and suicidal ideations[,]" "[losing] work in the past due to getting into confrontations with customers[,]" and "depressed, anxious, or labile moods at times with ruminative thought content[.]" (Tr. 27 (citing ex. 13F)). Later in his decision, ALJ Wilkerson also provided a thorough discussion of the "paragraph B" criteria of Listings 12.04, 12.06, and 12.08. (Tr. 29).

However, ALJ Wilkerson concluded that "mental status examinations from her primary care providers and pain management clinics do not support disabling limitations from the impairments." (Tr. 27). He noted that she was observed to have "normal findings for mood/affect,

speech, behavior, judgment, thought content, and cognition including memory and attention[.]" (Tr. 27 (citing Tr. 483, 490, 497, 506, 584, 624, 659, 1302, 1363, 1381, 1398, 1528, 1653)). ALJ Wilkerson also discussed how, though Claimant was reported to have abnormal moods and thought content in her professional mental health records, she still exhibited intact attention and concentration, fair to good judgment and insight, average intellectual functioning, and linear thought organization. (Tr. 27 (citing Tr. 736, 744, 777-78, 787-88)). He emphasized that these findings remained stable in the most recent records and there were fewer abnormal observations of mood and thought content. (Tr. 27 (citing Tr. 1678, 1687-88, 1696-97)). ALJ Wilkerson determined that periods of acute symptom exacerbation during the COVID-19 pandemic were not reflective of Claimant's overall functioning, noting how "on several occasions throughout 2020 and 2021, she reported that she was 'much improved' since starting treatment, often describing mild to moderate symptoms[.]" (Tr. 28 (citing Tr. 1131, 1146, 1154, 1185, 1192, 1205, 1212, 1218, 1683, 1693, 1750, 1752, 1756, 1758, 1761, 1766, 1769, 1772, 1777)). Based on ALJ Wilkerson's discussion of the relevant records, the Undersigned finds that he cited to evidence adequate to support his conclusion as to Claimant's mental RFC.[7]

Claimant first contends that ALJ Wilkerson erred by his "omission of all [Claimant's] symptoms in the particular notes he cites[.]" (DN 13, at PageID # 1826). Claimant highlights portions from four of her treatment notes, arguing that they detract from ALJ Wilkerson's mental RFC determination: reports on her "suicidal ideation," "AV hallucinations," her "anxious and

---

[7] Claimant argues that "[m]ental impairments do not require the same degree of substantiation as physical impairments," citing *Blankenship v. Bowen*, 874 F.2d 1116 (6th Cir. 1989) in support. In *Blankenship*, the Sixth Circuit inferred that the claimant was disabled, despite a lack of recent hard medical evidence, on the basis that "[a] psychiatric impairment is not as readily amendable to substantiation by objective laboratory testing as a medical impairment[.]" *Id.* at 1121 (quoting *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)). Here, however, ALJ Wilkerson pointed to medical evidence, including findings from the same treatment notes referenced by Claimant, which contradicts her allegations. Thus, valid reasons exist to question these allegations.

tearful" presentation, and "depressed" mood. (*Id.* (citing Tr. 1772, 1776, 1779, 1782)). Yet, like her arguments regarding her physical RFC, Claimant directs the Undersigned to evidence other than that relied on by ALJ Wilkerson to support a disability finding, as opposed to attacking the evidentiary sufficiency of ALJ Wilkerson's decision itself. Such is insufficient, as an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

Second, Claimant asserts that substantial evidence does not support ALJ Wilkerson's determination that she can adapt and manage herself in the workplace. (DN 13, at PageID # 1831). In assessing whether Claimant's mental impairments met any listing, ALJ Wilkerson determined that Claimant had a moderate limitation in adapting and managing herself. (Tr. 24). While ALJ Wilkerson noted that Claimant presented as depressed and with a labile mood at times, her largely stable mental status findings did not support a marked limitation in this area. (Tr. 29). ALJ Wilkerson emphasized that Claimant generally maintained normal cognitive function and was observed to have normal findings of mood/affect, speech, behavior, and judgment. (*Id.* (citing exs. 2F, 8F, 12F)). He also highlighted that Claimant has not required overnight hospitalization for episodes of mood or emotional lability. (Tr. 29). Despite finding that Claimant was moderately limited in this area, ALJ Wilkerson included additional restrictions in his RFC to account for her subjective complaints, including a restriction to "routine and low stress work" and "limited social contact[.]" (*Id.*). In support of her argument, Claimant references a progress note from a January 2022 therapy session and several of her own subjective complaints. (*Id.* at PageID # 1830). But Claimant's argument amounts to yet another attempt to point to contrary evidence in the record. Therefore, her argument is meritless.

Third, Claimant puts forth a largely undeveloped argument that ALJ Wilkerson violated 20 C.F.R. § 416.929(C)(3)(i)-(vii) by not considering Claimant's activities of daily living when he evaluated her symptoms of pain, AV hallucinations, and memory deficits. (DN 13, at PageID # 1824). When forming an RFC, an ALJ must assess the claimant's subjective allegations regarding her symptoms. 20 C.F.R. §§ 404.1529(a), 416.929(a). The regulations note that a claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be objective medical evidence that shows the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. *Id.* If the ALJ finds that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then assess the intensity and persistence of a claimant's symptoms to determine how those symptoms limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). In doing so, the ALJ should consider several factors including a claimant's daily activities; the location, duration, frequency, and intensity of a claimant's pain or other symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of claimant's medications; and any other measures a claimant may use to alleviate pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929).

In support of her argument, Claimant cites to multiple pages of her hearing transcript and the functional report completed by her mother. (DN 13, at PageID # 1824 (citing Tr. 47-48, 51-52, 55-56, 378-85)). However, ALJ Wilkerson summarized Claimant's testimony from her hearing, including much of the testimony referenced by Claimant in her brief. (Tr. 26). For instance, ALJ Wilkerson acknowledged how Claimant testified that her back "hurts with standing, bending,

squatting, and even sitting." (*Id.*). He also included her testimony about the frequency and duration of her hallucinations and intrusive thoughts and noted that she sometimes sees shadows or feels things crawling on her. (*Id.*). After summarizing Claimant's testimony, ALJ Wilkerson found that her medically determinable impairments "could reasonably be expected to cause the alleged symptoms[.]" (*Id.*). However, he noted that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*).

ALJ Wilkerson proceeded to discuss the record evidence for Claimant's physical and mental impairments, addressing several of the credibility factors. For example, ALJ Wilkerson considered the type, dosage, and effectiveness of Claimant's medications and other treatments for her back pain. (Tr. 27). He also described Claimant's obesity as an aggravating factor and discussed how the COVID-19 pandemic affected the frequency and intensity of Claimant's hallucinations and other mental symptoms. (Tr. 28). Although ALJ Wilkerson did not address certain daily activities cited by Claimant in her brief, "[i]t is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 U.S. Dist. LEXIS 55798, at *9 (W.D. Mich. Apr. 1, 2014) (citing *Storey v. Comm'r of Soc. Sec.*, No. 98-1628, 1999 U.S. App. LEXIS 8357, at *9 (6th Cir. Apr. 27, 1999)); *see also Tiffany H. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00226-DJH-CHL, 2022 U.S. Dist. LEXIS 160702, at *34 (W.D. Ky. Aug. 9, 2022) ("The regulations only require an ALJ to *consider* the pertinent factors; they do not require the ALJ to discuss all the factors in his or her opinion."). As for the remaining evidence cited by Claimant, including her mother's functional report, ALJ Wilkerson was not required to address every piece of evidence in the administrative record. The Sixth Circuit in *Thacker v. Commissioner* noted that the failure of an ALJ to discuss

certain observations made by third parties concerning a claimant's activities "does not indicate that they were not considered." *Thacker*, 99 F. App'x at 665; *see also Morrin v. Comm'r of Soc. Sec.*, No. 3:16 CV 1962, 2017 U.S. Dist. LEXIS 157680, at *6 (N.D. Ohio Sep. 26, 2017). Thus, ALJ Wilkerson's failure to discuss Claimant's daily activities does not render his analysis invalid.

Finally, Claimant argues that ALJ Wilkerson "did not explain his reasoning with citations to the record how he determined that the quantity, length, and quality of . . . disruptions [due to her hallucinations and memory deficit] allows [sic] consistent work in the workplace." (DN 13, at PageID # 1829). But Claimant misreads ALJ Wilkerson's analysis, which did not connect Claimant's hallucinations and memory issues with her ability to perform sustained work. Rather, he recounted Claimant's testimony about these symptoms as a contrast to the medical evidence and used this contrast in formulating Claimant's mental RFC. The Court finds no error in ALJ Wilkerson's use of this evidence for this purpose; instead, doing so is consistent with the applicable regulations.

Accordingly, the Undersigned finds that ALJ Wilkerson's analysis of Claimant's mental RFC is supported by substantial evidence.

### C. Combined Effects of Claimant's Impairments

Claimant argues that ALJ Wilkerson failed to assess the combined effects of her physical and mental impairments in determining her RFC. (DN 13, at PageID # 1827-28). An ALJ is required to consider the combined effects of a claimant's impairments in determining whether the claimant is disabled. 20 C.F.R. §§ 404.1523(c); 416.923(c) (2018). Discussing multiple impairments individually does not mean the ALJ failed to consider the combined effects of those impairments where the ALJ specifically referred to a "combination of impairments" in finding that the claimant did not meet the listings. *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589,

592 (6th Cir. 1987); *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990). At Step Three, ALJ Wilkerson found that Claimant "d[id] not have an impairment or *combination of impairments*" that satisfied any listing. (Tr. 24 (emphasis added)). This statement evidences that ALJ Wilkerson considered Claimant's impairments in combination though he discussed them individually in his decision. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851-52 (6th Cir. 2020).[8] And given ALJ Wilkerson's discussion of Claimant's individual impairments, (Tr. 26-28), the Undersigned finds that Claimant's argument is without merit.

### D.  Improper Assessment of Opinion Evidence

Claimant argues that ALJ Wilkerson erred in evaluating the opinion evidence in the record, including the opinions of consultative examiner Dr. Michael Whitten ("Dr. Whitten") and the State Agency physicians.

### 2. Dr. Whitten's Opinion

Following his consultative examination on September 18, 2020, Dr. Whitten determined that Claimant was markedly limited in both her ability to tolerate the stress and pressure of day-to-day employment and respond appropriately to supervisors and coworkers. (Tr. 566). But Dr. Whitten found that Claimant "would be able to function in a variety of jobs with low stress and minimal interaction with the public." (Tr. 567). In weighing Dr. Whitten's opinion, ALJ Wilkerson was "persuaded in part" by his findings. (Tr. 28). Claimant puts forth two arguments regarding ALJ Wilkerson's treatment of Dr. Whitten's opinion: (1) ALJ Wilkerson failed to meet the

---

[8] In support of her argument, Claimant cites to *Blankenship v. Bowen* in which the Sixth Circuit noted in reversing the Commissioner's final decision that, "[d]espite the ALJ's statement that the combined effects of appellant's nonexertional and exertional impairments were considered, there was, in reality, no combined treatment in the ALJ's subjective symptom analysis or elsewhere." 874 F.2d 1116, 1123-24 (6th Cir. 1989). The Undersigned finds Claimant's citation to *Blankenship* non-dispositive of the instant issue given the other published cases cited above.

articulation requirement and (2) ALJ Wilkerson did not provide Dr. Whitten with necessary background information.[9]

First, Claimant argues that ALJ Wilkerson did not explain how Dr. Whitten's findings were consistent with and supported by the record. (DN 13, at PageID # 1825). The new regulations for evaluating medical opinions are applicable to Claimant's case because she filed her application after March 27, 2017. Pursuant to 20 C.F.R. §§ 404.1520c, 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source. 20 C.F.R. §§ 404.520c(a), 416.920c(a). Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by referencing the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(a), (c); 20 C.F.R. § 416.920c(a), (c). The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how he considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(a), (b)(2); 20 C.F.R. § 416.920c(a), (b)(2). However, the regulations state that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how he considered all of the factors for all of the medical opinions . . . in [the] case record[;]" thus, an ALJ is not required to explicitly discuss how he weighed the factors of relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(b)(1)-(2), 416.920c(b)(1)-(2).

---

[9] Claimant also argues in passing that ALJ Wilkerson did not comply with 20 C.F.R. § 404.1517 which permits ALJs to schedule a consultative examination "[i]f your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled[.]" (DN 13, at PageID # 1825). The Undersigned disagrees. It is well within the ALJ's discretion to order a consultative examination. *See Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony is necessary."). And, regardless, Claimant fails to explain her reasoning behind this argument.

The "consistency" factor denotes the extent to which the medical opinion "is consistent with the evidence from the other medical sources and nonmedical sources in the claim[.]" *Id.* (c)(2). In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1).

With respect to the consistency factor, the Undersigned finds that ALJ Wilkerson's evaluation is supported by substantial evidence. Although ALJ Wilkerson did not cite to inconsistent medical evidence in the paragraph evaluating Dr. Whitten's opinion, he did so elsewhere in his decision. *See Forrest v. Comm'r of Soc. Sec.*, 591 App'x 359, 366 (6th Cir. 2014) (recognizing that the ALJ's analysis may be found throughout the decision). For instance, although ALJ Wilkerson acknowledged that Claimant's paranoia, social anxiety, and occasional labile and anxious mood impacted her ability to interact with others, he found that this limitation was "not marked as suggested by the consultative examiner." (Tr. 29). ALJ Wilkerson noted that Claimant's providers did not observe her responding to external stimuli or experiencing command hallucinations. (*Id.*). ALJ Wilkerson also cited to medical records which show Claimant exhibiting intact attention and concentration, fair to good judgment, and normal speech and behavior. (*Id.* (citing exs. 2F, 8F, 12F, 13F, 17F)).

In discussing Claimant's ability to adapt and manage herself, ALJ Wilkerson noted that Claimant's "stable mental status findings do not support marked limits in stress-coping or responding to situations/changes as suggested by the [sic] 1E or 6F." (Tr. 29 (exhibit 6F being Dr. Whitten's opinion)). Though Claimant at times exhibited a depressed or labile mood, ALJ Wilkerson noted that Claimant generally had "normal findings of mood/affect, speech, behavior,

and judgment" and did not require "overnight hospitalization for episodes of mood or emotional lability." (Tr. 29 (citing exs. 2F, 8F, 12F)). The evidence cited by ALJ Wilkerson showing stable mental status findings substantially supports his consistency evaluation.

However, the Undersigned agrees with Claimant that ALJ Wilkerson failed to provide the requisite analysis on the opinion's supportability. Though he was "persuaded in part" by Dr. Whitten's opinion, ALJ Wilkerson failed to specify the portions of the opinion with which he agreed or disagreed. *See Sparks v. Kijakazi*, No. 2:21-CV-102-DCP, 2022 U.S. Dist. LEXIS 176139, at *18 (E.D. Tenn. Sep. 28, 2022) (summarizing instances in which the ALJ failed to meet the articulation requirement). Nevertheless, under certain circumstances, an ALJ's failure to apply the regulations may be considered harmless error, such as when the Commissioner "has met the goal of . . . the procedural safeguard of reasons." *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)); *see also Smalley v. Comm'r of Soc. Sec.*, No. 20-1865, 2021 U.S. App. LEXIS 26754, at *11 (6th Cir. Sep. 3, 2021) (One of the purposes served by the articulation requirement is "maintaining public confidence in the basic fairness of the administration of the Social Security program to have disappointed claimants at least understand why the government has rejected [an] opinion[.]"). Several district courts within the Sixth Circuit have determined that an "ALJ's failure to explain his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion can only be deemed harmless error" in three instances: "(1) the medical opinion is patently deficient; (2) the ALJ adopted the medical opinion or made findings consistent with the opinion; or (3) the goal of the regulation was otherwise met." *Lorraine R. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00396, 2022 U.S. Dist. LEXIS 166503, at *14 (S.D. Ohio Sep. 14, 2022); *see also Jada H. v. Kijakazi*, No. 3:22-CV-00520-CRS, 2023 U.S. Dist. LEXIS 235403,

at *11-12 (W.D. Ky. Nov. 28, 2023); *Greggs v. Kijakazi*, No. 1:22-cv-0041, 2023 U.S. Dist. LEXIS 94504, at *23 (M.D. Tenn. May 31, 2023).

ALJ Wilkerson's analysis satisfies the third exception for harmless error because it meets the goal of the regulations and permits Claimant to understand why he found the opinion partly persuasive. Immediately after noting Dr. Whitten's conclusion that Claimant could function in a variety of jobs with low stress and minimal public interaction, ALJ Wilkerson discussed Dr. Whitten's assessment of marked limitations in the areas of stress tolerance and social interaction. By identifying this inconsistency in Dr. Whitten's findings, ALJ Wilkerson demonstrated how Dr. Whitten undermined his own persuasiveness. Because ALJ Wilkerson limited Claimant to a "lower stress work environment" and prohibited public interaction, the logical conclusion is that ALJ Wilkerson meant that these limitations were persuasive, as opposed to other, more restrictive, limitations. For this reason, ALJ Wilkerson's failure to explicitly discuss the supportability of Dr. Whitten's opinion was harmless.

Second, Claimant argues that Dr. Whitten was not "given any necessary background information about [Claimant's] condition." (DN 13, at PageID # 1825 (internal quotations omitted)). In her reply, Claimant cites to several pages from her medical records which "reveal treatment for anxiety and depression with medications prior to the consultative examination" and appears to argue that these should have been provided to Dr. Whitten. (DN 17, at PageID # 1871 (citing Tr. 477-78, 485, 488-89, 492, 497, 500)). 20 C.F.R. § 416.917 does not place an imperative on the government agency to provide a consultative examiner with a full medical record, but only explains that "[w]e will also give the examiner any necessary background information about your condition."

Dr. Whitten's report does not mention whether or not he was provided with Claimant's medical records. But even if the agency had not given Dr. Whitten these documents, the Undersigned finds no reason for remand on this issue. *Grant v. Colvin* is persuasive. No. 3:14-CV-00399, 2015 U.S. Dist. LEXIS 104110 (E.D. Tenn. Aug. 7, 2015). In *Grant*, the Eastern District of Tennessee found no error in the agency's failure to provide the consultative examiner with the plaintiff's medical records because the plaintiff had provided the examiner with a full history and the ALJ assessed the examiner's opinion based on her examination's results rather than her knowledge of the plaintiff's medical records. *Id.* at *31. Similarly, during her mental status evaluation, Claimant reported to Dr. Whitten that she had been suffering from anxiety and depression and had been prescribed Depakote and Topamax. (Tr. 564, 567). This is the same information in the medical records which Claimant argues should have been provided to Dr. Whitten. (Tr. 477-78, 485, 488-89, 492, 497, 500). Further, ALJ Wilkerson assessed Dr. Whitten's opinion based on the results of his evaluation, not his review (or lack thereof) of Claimant's medical records. (Tr. 28-29). Thus, Claimant's argument is meritless.

For these reasons, Claimant has failed to demonstrate any reversible error in ALJ Wilkerson's analysis of Dr. Whitten's opinion.

### 2. State Agency Physicians

State Agency medical consultants opined that Claimant could perform sedentary work with occasional postural activities except she could never climb ladders, ropes or scaffolds. (Tr. 72, 77, 94, 103). They also opined that Claimant could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, and stand and/or walk for two hours in an eight-hour workday. (Tr. 71, 93). They placed limitations on Claimant's exposure to vibrations, pulmonary irritants, and hazards. (Tr. 73, 95-96). ALJ Wilkerson was "persuaded in part" by the State Agency

physicians' findings. (Tr. 28). He adopted the majority of the physicians' limitations, except, noting that the lifting and carrying limitations resembled those of light work,[10] he restricted Claimant "to sedentary work in all exertional activities, not just standing and walking." (*Id.*).

Because "the agency did not have the evidence of worsening findings to consider in combination with [Claimant's] morbid obesity[,]" Claimant argues that ALJ Wilkerson "presumes the medical experts' opinions would be the same as his."[11] (DN 13, at PageID # 1828). The Sixth Circuit has held that an ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records "if there is some indication that the ALJ at least considered these facts before assigning greater weight to an opinion that is not based on the full record." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493-94 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)); *see also Houchens v. Kijakazi*, No. 1:20-CV-00173-HBB, 2022 U.S. Dist. LEXIS 30582, at *21 (W.D. Ky. Feb. 18, 2022) ("From [the MRIs and other raw medical data], the ALJ could reasonably find that a limitation on light exertion is consistent with the evidence as a whole and make reasonable adjustments to the postural and environmental restrictions based on the subsequently received medical evidence."); *Shawn P. v. Kijakazi*, No. 3:20-CV-00441-CHB-RSE, 2022 U.S. Dist. LEXIS 147744, at *16-17 (W.D. Ky. July 13, 2022) ("Plaintiff seems to take issue with the consultants' findings mainly because additional evidence was introduced into the record after their opinions were issued. But . . . ALJ Alexander clearly considered the later-submitted evidence and

---

[10] The physical exertion requirements for sedentary work "involve[] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" while light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(a).

[11] Claimant makes a similar argument regarding Dr. Whitten's opinion, asserting that, because "[t]he state agency did not have the consultant report . . . the ALJ's determination is conjecture. The ALJ is injecting medical expertise[.]" (*Id.* at PageID # 1829-30). But the State Agency physicians did consider Dr. Whitten's report in their opinions. (Tr. 70-71, 92-93). Thus, the Undersigned rejects Claimant's argument.

incorporated additional limitations 'to ensure adequate weight [was] given to [Plaintiff's] subjective allegations.'").

Here, ALJ Wilkerson considered the evidence that postdated the State Agency opinions. He further limited Claimant to sedentary work in light of the worsening findings: "[e]vidence received since the DDS assessment shows worsening findings in the lumbar spine and the claimant is morbidly obese, supporting the need for sedentary work." (Tr. 28 ("[T]he combination of back pain and obesity supports the postural limitations set forth by the DDS."). Although the State Agency opinions were not based on the full record, ALJ Wilkerson's analysis is sufficient because he considered Claimant's lumbar MRIs and her obesity and incorporated additional limitations to ensure adequate weight was given to this evidence.

Even if ALJ Wilkerson erred in analyzing the State Agency findings, any error would be harmless, because ALJ Wilkerson added more restrictions than were opined by the State Agency physicians by crediting the worsening findings that were supported by the record. *See, e.g., Taylor D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00048-RGJ-CHL, 2023 U.S. Dist. LEXIS 45098, at *37 (W.D. Ky. Jan. 18, 2023) ("Because the ALJ imposed greater limitations in her RFC analysis [than those opined by the State Agency physicians], the undersigned finds no procedural violation of the applicable regulations."); *Holland v. Comm'r of Soc. Sec.*, No. 2:21-cv-10364, 2022 U.S. Dist. LEXIS 154387, at *24 (E.D. Mich. Aug. 10, 2022) (citing *Mosed v. Comm'r of Soc. Sec.*, No. 2:14-cv-14357, 2016 U.S. Dist. LEXIS 36981, at *20 (E.D. Mich. Jan. 22, 2016), *report and recommendation adopted by* 2016 U.S. Dist. LEXIS 35898, at *3 (E.D. Mich. Mar. 21, 2016) ("Plaintiff's argument that the ALJ erred in assessing a more restrictive RFC than that opined by the State Agency consultants is curious and unavailing.") (add'l citation omitted)). Claimant is in no position to assert, as error, something that benefitted her.

Claimant also argues that ALJ Wilkerson erred by analyzing only the "Part B" criteria of the State Agency physicians' mental RFC assessment. (DN 13, at PageID # 1828). However, this is not the case. In addition to discussing the opinions' paragraph B criteria, ALJ Wilkerson outlined the following findings by the physicians:

> [T]he claimant was limited to simple and detailed—but non complex [sic]—tasks that require some independent judgment and some variations in 2-hour work segments. The opinions found the claimant could not interact with the public and could occasionally interact with coworkers and supervisors. Lastly, they found she could adapt to situational conditions and normal changes in routine.

(Tr. 28, 76, 101). Claimant provides no legal support for her argument that ALJ Wilkerson should have provided a more detailed analysis of the State Agency physicians' mental RFC assessment.

Accordingly, substantial evidence supports ALJ Wilkerson's analysis of Claimant's medical opinions and any errors stemming from his violation of the regulations are harmless.[12]

### E. Finding No. 9

Claimant contends that ALJ Wilkerson "failed to accurately portray [Claimant's] physical and mental impairments in his hypothetical questions to the VE." (DN 13, at PageID # 1832). An ALJ's hypothetical questions to a VE must "accurately portray the claimant's physical and mental impairments" for the ALJ to be entitled to rely on the VE's testimony. *Hare v. Comm'r of Soc. Sec.*, 37 F. App'x 773, 776 (6th Cir. 2002); *see also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). "However, the ALJ is only required to incorporate into the hypothetical questions those limitations which have been accepted as credible." *Hare*, 37 Fed. App'x at 776; *see also Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("[T]he ALJ

---

[12] Claimant additionally argues that "the ALJ does not explain how his selected mental findings support his rejection of the treating sources [sic] determination that [Claimant] has substantial loss in the ability to function appropriately in usual work situations and to changes in a routine work setting." (DN 13, at PageID # 1831 (citing Tr. 29, 301)). In support, Claimant references various symptoms and treatment notes, alleging that these demonstrate that her "inability to function in the workplace is uncontradicted[.]" (DN 13, at PageID # 1831). Notwithstanding this evidence, because the Court has already determined that substantial evidence supports ALJ Wilkerson's mental RFC finding, Claimant's argument fails.

is not obliged to incorporate unsubstantiated complaints into his hypotheticals[.]"). ALJ Wilkerson's hypothetical question in this case paralleled the physical and mental limitations incorporated in his RFC finding. (*Compare* Tr. 25, *with* Tr. 56-57). Because this hypothetical set forth the limitations in the RFC fashioned by ALJ Wilkerson—which the Undersigned found is supported by substantial evidence—ALJ Wilkerson did not err in relying on the VE's testimony. Consequently, the VE's testimony constitutes substantial evidence to support ALJ Wilkerson's Finding No. 9.

<u>IV. Recommendation</u>

For the foregoing reasons, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

<u>NOTICE</u>

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be

timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:       Counsel